IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FIRST FITNESS INTERNATIONAL, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:07-CV-1171-N |
| FREDERICK THOMAS, *et al.*, | § § § | |
| Defendants. | § § | |

## **ORDER**

This Order addresses Defendants Frederick Thomas and Christina Sapp's motion to dismiss for lack of personal jurisdiction [8]. Because the record demonstrates that Defendants acted knowing that their use of Plaintiff First Fitness International, Inc.'s ("FFI") trademarks would cause harm in Texas, the Court denies Defendants' motion.

### I. BACKGROUND FACTS

FFI, which maintains its principal place of business in Carrollton, Texas, is the owner of various federal trademarks, including FIRST FITNESS, ZAVITA, BODY FX, and SUDDENLY SLIM!, which it uses to market and distribute nutritional and dietary foods and supplements through a network of authorized distributors and its websites, www.firstfitness.com and www.zavita.com. This case arises from Defendants' unauthorized use of the domain names www.1stfitness.net, www.getskinnytoday.info, and www.slimfx.us to resell FFI products under the assumed trade names "1st Fitness" and "ZavitaRitaville." On their websites, which Defendants registered under a non-existent address in Lake City,

ORDER – PAGE 1

Florida, Defendants use numerous federal trademarks registered to FFI and, prior to May 2007, purported to be located at the address "1st Fitness, 228 Adams St., Dallas, TX."

In addition to the purported location of their operations, Defendants have other contacts with the state of Texas and FFI. Prior to January 2007, Defendants were authorized FFI distributors pursuant to the terms of distribution agreements governed by Texas law, and, in 2003, Thomas attended FFI's annual distributors meeting in Dallas, Texas. In January 2007, Defendants terminated their distribution agreements with FFI and began to market FFI products on their own without FFI's permission.

On April 27, 2007, FFI sent a cease-and-desist email[1] to Defendants, informing them of FFI's trademark rights and requesting the transfer of the www.1stfitness.net domain name. In response, Defendants replaced the Dallas, Texas address on their website with one located in Warner Robbins, Georgia and placed a disclaimer on each site, indicating that their operations were not affiliated with FFI. Defendants, nonetheless, continued to use FFI's trademarks and to resell FFI products without authorization.

Accordingly, FFI initiated this suit, alleging causes of action against Defendants for infringement of FFI's federal trademark rights, violation of the Anticybersquatting Consumer Protection Act, unfair competition, and other claims under Texas state law. Defendants now move to dismiss this case for lack of personal jurisdiction on the grounds that they lack sufficient contacts with the state of Texas.

---

[1]FFI also sent a cease-and-desist letter via certified mail to the Texas address listed on Defendants' website. It is unknown whether Defendants ever received this letter; however, Defendants acknowledge receipt of FFI's email.

## II. PERSONAL JURISDICTION EXISTS BECAUSE DEFENDANTS' TORTIOUS ACTIONS WERE EXPRESSLY AIMED AT TEXAS

Because the record establishes that Defendants acted with knowledge that their use of FFI's trademarks would cause harm to FFI in Texas, the Court finds that personal jurisdiction exists in this case. When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that such jurisdiction exists. *See Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). However, the plaintiff need make only a prima facie showing that personal jurisdiction is proper; the plaintiff need not demonstrate that personal jurisdiction exists by a preponderance of the evidence. *See Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982) ("[Plaintiff] need not . . . establish personal jurisdiction by a preponderance of the evidence; prima facie evidence of personal jurisdiction is sufficient."). In resolving a dispute over personal jurisdiction, a court may consider the "pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992). Further, a court must accept all of the uncontradicted allegations in the plaintiff's complaint as true and also resolve all conflicts of fact in favor of the plaintiff. *See Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) ("[I]n determining whether a *prima facie* case for personal jurisdiction exists on a motion to dismiss, 'uncontroverted allegations in the plaintiff's complaint must be taken as true.'" (quoting *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 2005))).

In a diversity action, personal jurisdiction exists if (1) the forum state's long-arm statute confers such jurisdiction and (2) the forum state's exercise of that jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *See Paz*, 445 F.3d at 812 (quoting *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997)). Where, as in Texas, the forum state's long-arm statute has been interpreted to extend to the limits of due process, a court need only determine whether personal jurisdiction in the forum state is constitutionally permissible. *See Religious Tech. Center v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003) ("Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process."). The Due Process Clause permits the exercise of personal jurisdiction when (1) the defendant has "purposely availed" himself of the protections and benefits of the forum state by establishing "minimum contacts" with that state and (2) that exercise does not offend "traditional notions of fair play and substantial justice." *See Paz*, 445 F.3d at 813 (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001)).

### A. *Specific Personal Jurisdiction Exists Because Defendants Intentionally Directed Their Tortious Actions at Texas*

The "minimum contacts" requirement is met in this case because Defendants knew that their infringing actions would cause harm to FFI in Texas. Minimum contacts are those that give rise to either "specific" or "general" personal jurisdiction. *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) ("There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal

ORDER – PAGE 4

jurisdiction."). Specific jurisdiction arises from contacts with the forum state that relate to the cause of action at issue; general jurisdiction exists when the defendant's contacts with the forum state are unrelated to the action, but nonetheless are "continuous and systematic." *See Luv N' Care*, 438 F.3d at 469.

Courts in this District have repeatedly held that "[t]he exercise of [specific] personal jurisdiction over an individual for his Internet activities, including allegations of trademark infringement and cybersquatting, is proper when a defendant intentionally directs his tortious activities toward the forum state." *Carrot Bunch Co. v. Computer Friends, Inc.*, 218 F. Supp. 2d 820, 826 (N.D. Tex. 2002); *see also Global 360, Inc. v. Spittin' Image Software, Inc.*, No. 3:04-CV-1857-L, 2005 WL 625493, at *7 (N.D. Tex. Mar. 17, 2005) (collecting similar cases and holding that personal jurisdiction exists because defendant "intentionally directed tortious activities toward the state of Texas by, among other acts, registering, using and maintaining the ImagingforWindows.com website, over which the infringing product was sold"). In *Carrot Bunch*, the Court found personal jurisdiction over the defendant "because he intentionally directed his tortious activities toward the forum state by registering, using and maintaining [the allegedly infringing domain names at issue] with knowledge that his action would likely injure [plaintiff] in Texas," the location of its principal place of business. *Id.* Other courts have found specific personal jurisdiction over causes of action for trademark infringement and cybersquatting in similar scenarios. *See, e.g.*, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (finding specific personal jurisdiction because "[Defendant] Toeppen engaged in a scheme to register [Plaintiff] Panavision's trademarks

as his domain names for the purpose of extorting money from Panavision. His conduct, as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business."); *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, L.P.*, 34 F.3d 410, 411 (7th Cir. 1994) (finding specific personal jurisdiction because "[b]y choosing a name that might be found to be confusingly similar to that of the [Plaintiff] Indianapolis Colts, the defendants assumed the risk of injuring valuable property located in Indiana").

Here, the record establishes prima facie evidence that Defendants intentionally infringed FFI's trademarks with knowledge that their tortious actions would harm FFI in Texas, the location of its principal place of business. The record establishes that Defendants are highly familiar with FFI, its location, and its numerous trademarks, and previously enjoyed a close relationship with the company as highly successful authorized distributors. As authorized distributors, Defendants contracted with FFI in Texas and repeatedly ordered and received FFI products that were distributed exclusively from Texas. In fact, while an authorized dealer, Thomas visited Texas to attend FFI annual distributors meeting, at which he and his wife were honored as some of FFI's highest selling distributors, in the metropolitan area where the company's principal office is located. Further, before receiving FFI's cease-and-desist letter, Defendants' purported to operate their websites from within Texas – again, in fact, in the same metropolitan area where FFI's principal office is located.[2]

---

[2]The Court notes that, while it need not reach this issue, specific and general personal jurisdiction may also exist in this case on the grounds that, until May 2007, Defendants purported to operate the websites at issue in this case *from the forum state*. If Defendants had

Based on the pleadings and affidavits in this case, the Court concludes that FFI has made a prima facie showing that Defendants intentionally infringed FFI's trademarks and registered www.1stfitness.net in bad faith in an attempt to divert customers from FFI and trade off FFI's good will with knowledge that those tortious actions would harm FFI in Texas.[3] Accordingly, the Court finds that FFI has established the existence of specific personal jurisdiction in this case.[4]

---

in fact done so, their contacts with Texas would no doubt give rise to both specific and general personal jurisdiction.  It would be a rather inequitable result were a defendant able to falsely represent that it had substantial contacts with the forum state prior to litigation and then later avoid personal jurisdiction in that state on the grounds that it was, in actuality, located in another state.

[3]While courts have noted that "simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another," *Panavision*, 141 F.3d at 1322, this is not a case where the defendants innocently used a mark that they were unaware was registered or innocently registered a domain name similar to a registered mark with a good faith intent to use it for unrelated commercial activity.  Instead, the record in this case establishes a prima facie case that Defendants did "'something more' to demonstrate that [they] directed [their] activity toward the forum state," *id.*, by intentionally undertaking the alleged tortious actions in an attempt to divert customers away from FFI with intimate knowledge of FFI, its location in Texas, and its valuable trademark rights and while representing that they were doing so from within the forum state.

[4]The Court finds specific personal jurisdiction on the basis of Defendants' intentional actions directed toward Texas without reaching the question of whether Defendants' interactive websites also give rise to sufficient minimum contacts.  The Court notes, however, that the record as it stands would likely not support personal jurisdiction on those grounds.  In determining whether personal jurisdiction is proper on the basis of an interactive website, the Fifth Circuit has stated that "[a]bsent a defendant doing business over the Internet or sufficient interactivity *with residents of the forum state*, we cannot concludes that personal jurisdiction is appropriate." *Mink v. AAAA Dev. L.L.C.*, 190 F.3d 333, 337 (5th Cir. 1999) (emphasis added).  In other words, for personal jurisdiction to exist on the basis of an interactive website, it is not enough that "Defendant appears to have the potential to interact with, sell products to, and contract with Texas residents;" the evidence in the record must

### *B. The Exercise of Personal Jurisdiction in This Case Comports*
### *With Notions of Fair Play and Substantial Justice.*

The Court further finds that the exercise of personal jurisdiction over Defendants in this case would not offend "traditional notions of fair play and substantial justice." In determining whether this standard is met, courts look to a number of factors including: (1) the burden placed on the defendant; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in the efficient resolution of disputes; and (5) the states' shared interest in furthering social policies. *See Paz*, 445 F.3d at 814. Once the plaintiff has established minimum contacts, however, a defendant "must present a compelling case that the presence of some considerations would render jurisdiction unreasonable." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 477 (1985). Accordingly, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposely established minimum

---

"support a finding that this level of activity has taken place." *People Solutions, Inc. v. People Solutions, Inc.*, 2000 WL 1030619, at *4 (N.D. Tex. July 25, 2000); *see also Mothers Against Drunk Driving v. DAMMADD, Inc.*, 2003 WL 292162, at *6 (N.D. Tex. Feb. 7, 2003) (failing to find personal jurisdiction even when evidence showed a number of contacts between Texas residents and the interactive website at issue). Here, although FFI highlights the highly interactive nature of Defendants' websites – particularly www.slimfx.us – it fails to present any evidence of sales from Defendants' websites to Texas residents other than one "manufactured" purchase by an FFI employee. While neither the Fifth Circuit nor this District has directly addressed the effect of a manufactured sale on jurisdiction, courts in other jurisdictions have failed to find minimum contacts on the basis of this sort of commercial activity. *See Millennium Enters., Inc. v. Millennium Music, L.P.*, 33 F. Supp. 2d 907, (D. Or. 1999) (failing to find personal jurisdiction on the basis of purchase made at plaintiff's counsel's instruction); *Watchworks, Inc. v. Total Time, Inc.*, No. 01 C 5711, 2002 WL 424631, at *8 (N.D. Ill. Mar. 19, 2002) (failing to find personal jurisdiction on the basis of sale to plaintiff's investigator).

contacts with the forum state." *Enviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d. 720, 725 (S.D. Tex. 1999) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

Here, these factors weigh in favor of finding personal jurisdiction. As discussed above, Defendants undertook their tortious actions with knowledge that those actions would cause harm in Texas and even held themselves out as located in Texas while doing so. Therefore, Defendants could have reasonably anticipated being haled into court in Texas. Further, while litigating in this forum will burden Defendants, the Courts finds that this burden is outweighed by Texas's interest in protecting its citizens from intentional tortious conduct and FFI's interest in obtaining relief. Therefore, the Court finds that the exercise of personal jurisdiction in this case would not be unreasonable.

Accordingly, because FFI has made a prima facie showing that Defendants have made minimum contacts with Texas and because doing so will not offend traditional notions of fair play and substantial justice, the Court finds that personal jurisdiction exists in this case.

### III. VENUE IS PROPER IN THIS DISTRICT

Finally, to the extent that Defendants' motion also requests a transfer of venue, the Court further denies that motion. When considering a motion to transfer venue, a district court must consider "a number of private and public interest factors, 'none of which can be said to be of dispositive weight.'" *In re Volkswagen of Am., Inc.*, 506 F.3d 376, 380 (5th Cir. 2007) (en banc) (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)). The private factors include: (1) access to sources of proof; (2) the availability

of the compulsory process power (3) costs to witnesses of appearing; and (4) any other practical considerations affecting the ease and expense of trial. *In re Volkswagen*, 506 F.3d at 380. The public interest factors include: (1) judicial economy; (2) interests associated with having local interests decided locally; (3) forum familiarity with the law at issue; and (4) problems arising from conflict of law. *Id.* In general, "Plaintiff's choice of forum is entitled to deference" such that the burden falls on the party seeking a transfer to show "good cause" why the case should be relocated. *Id.* at 384. Accordingly, "[w]hen the transferee forum is no more convenient than the chosen forum, the plaintiff's choice should not be disturbed." *Id.* at 384.

Here, the Court finds Defendants cannot show good cause for transfer because venue in Georgia would be, at best, no more convenient than in this District.[5] Although the record before the Court at this time is limited, it establishes that, along with FFI's principal place of business, key pieces of evidence in the case are located within this District. The record shows that Defendants previously contracted and conducted business with FFI in this District and, as discussed at length above, directed their allegedly tortious actions at this forum, where, accordingly, evidence of resulting harm is most likely to be found. Further, while the cost to Defendants of litigating outside their home state is real, transferring venue would merely shift that same burden, if not a heavier one, to FFI, which will likely rely on a number

---

[5]As did the Fifth Circuit in *In re Volkswagen*, the Court addresses only the private and public interest factors relevant in this case. *See In re Volkswagen,* 506 F.3d at 384 n.4 ("We address only the private and public interest factors that are contested by the parties. Several of the factors clearly weigh neither for nor against transfer, as the parties acknowledge and as is often the case.").

of witnesses who are employed within this District at FFI's principal place of business. Further, while residents of all localities have an interest in preventing consumer confusion, the Court concludes that residents within this District have a particularly strong interest in this case because it was brought by a local company against alleged trademark infringers and cybersquatters who directed their action at this forum and, until recently, purported to operate their allegedly unlawful operations from within this District. Accordingly, the Court holds that FFI's choice of forum controls in this case and denies Defendants' request for transfer.

## CONCLUSION

Because Defendants undertook tortious actions knowing that those actions would result in harm to FFI in Texas and because doing so will not offend traditional notions of fair play and substantial justice, the Court finds that personal jurisdiction exists in this case and denies Defendants' motion.

Signed January 2, 2008.

_____
David C. Godbey
United States District Judge